IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 9, 2024

**STATE OF TENNESSEE v. RODNEY HEATHERLY**

**Appeal from the Circuit Court for Lawrence County**
**No. 36829     M. Caleb Bayless, Judge**

_____

**No. M2023-00264-CCA-R3-CD**

_____

This is an appeal from the trial court's order of restitution.  The Appellant asserts error, and the State concedes.  After review, we reverse the trial court's judgment and remand the case for a new restitution hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JILL BARTEE AYERS and MATTHEW J. WILSON, JJ., joined.

Ben Bush, Summertown, Tennessee, for the appellant, Rodney Peyton Heatherly.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General; Brent Cooper, District Attorney General; and Christi L. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 11, 2022, the Appellant entered into a global plea agreement to resolve several unrelated felony offenses.  In case number 35964, he entered a guilty plea to felony possession with intent to sell methamphetamine and received a sentence of six years of confinement.  In case number 36736, he entered a guilty plea to felony theft of property (stolen motorcycle), and he received a three-year suspended sentence to be served consecutively to case number 35964 (felony drug case).  In case number 36829, he entered a guilty plea to felony arson (count one) (fire damage to the estate of deceased mother) and felony theft (count two) (theft of personal property from the estate of deceased mother), for which he received a concurrent probationary term of three years to be served

consecutively to his felony drug and motorcycle theft convictions. As part of the agreement, the Appellant agreed to pay restitution with the amount to be determined at a later date. The trial court imposed an effective twelve-year sentence with the first six years to be served in confinement on the felony drug case and the last six years to be served on probation for the motorcycle theft and the theft and arson related to the estate of the Appellant's deceased mother.

On January 19, 2023, an evidentiary hearing was held to determine restitution. The State advised the trial court that it was not seeking restitution for the motorcycle theft case, case number 36736, because it had been unable to contact the victim. Regarding the arson and theft of property from the Appellant's deceased mother, case number 36829, the State presented the testimony of the decedent's sister, Karyn Brann, who had been appointed the administrator of her sister's estate following her death. The subject property of the arson and theft was located at 236 South Old Military Road on two acres and was comprised of a three-bedroom home and a separate warehouse. The fire did not destroy the warehouse building, but the home was "burned down." Before the fire, the insurance company required Brann to photograph everything inside the home in her role as administrator. After the fire, the insurance company asked her to list the value of the items in the photographs, which she collectively estimated to be valued at $34,466.65. She estimated the house to be valued between $150,000 to $170,000 based on what realtors said they would list it for. Brann listed the value of the home and the personal property inside the home on a proof of loss statement for the insurance company, a copy of which was admitted as an exhibit. The proof of loss statement appears to be a form questionnaire showing Brann inserted a handwritten answer to the estate's estimated loss. It did not include photographs or a list of the items of personal property with their respective loss amount. Although the home was declared a total loss, the insurance company paid the bank $124,000, the remainder of the mortgage amount, but otherwise denied the estate's claim.

On cross-examination, Brann said that in 2020, the property's land value improvement was assessed at $153,400. Asked how she determined the value of the personal items inside the home, Brann explained that she looked at various online websites and obtained the original cost of the item and its replacement cost. She reviewed various photographs and identified items from the home that she did not include in the valuation of the personal property inside the home at the time of the arson. The photographs were not admitted as exhibits to the hearing.

Following Brann's testimony, the trial court advised the State that there was a difference between criminal and civil restitution cases and noted that the court needed to hear proof of the Appellant's ability to pay restitution. In response, the State referred to the jail credit the Appellant had received in the global plea agreement, noted the "substantial amount of time the Appellant had been incarcerated," and moved the court to

- 2 -

take judicial notice of an affidavit of indigency the Appellant had signed "indicating . . . although [the Appellant] did not file an income tax return in 2018, his last job was a job in logging at which he was employed at $100 a day." The Appellant did not object to the State's request of the trial court to consider the affidavit; however, the affidavit was not admitted as an exhibit, nor is it included in the record on appeal. The Appellant offered no proof.

Before determining restitution, the trial court asked the parties to clarify the Appellant's global plea agreement. In doing so, the trial court noted, and the State agreed, that the Appellant's effective sentence was as follows:

> But [the Appellant] pled guilty to a drug offense, and then there are two 3-year periods, both for the C felony theft and the C felony arson, running consecutive to that to-serve sentence as well as consecutive to one another, for a six-year period of time. So that is the time frame . . . in which we're looking for restitution?

In determining restitution, the trial court reasoned, in relevant part, as follows:

> However, the [c]ourt feels it's necessary to subtract the $124,000 received from insurance [from the $184,000 to $204,000 total valuation by Brann]. Obviously, insurance often has teams of lawyers to consider. So, that would bring it down a $60,000 to an $80,000 value in which the [c]ourt has considered prior to any sort of proof based on the affidavit of indigency.

> The [c]ourt routinely in domestic type matters, if somebody is underemployed, considers it basically on a $10 an hour wage. However, that would be slightly less than the value he claimed he received from his last job, a logging job.

> So[,] the [c]ourt would consider a $10 an hour job, which would be, approximately, $400 a week as opposed to the $500 a week, and that comes out over a year to $20,800. If [the Appellant] were to pay half of that toward restitution in this case over a six-year time frame, that total amount would be $62,400, and that would be broken down on a monthly basis to $866.67. So that amount happens to fall within the range of the [$60,000] to [$80,000].

> So, the [c]ourt will set restitution in this matter half and half, half to the theft case, half to the arson case of $31,000 – in regards to the arson case, $31,200, and then $31, 200 to the theft case, for a total of $62, 400. That can be paid on a $866.67 a month basis once released from custody as a condition of probation.

On January 19, 2023, judgments for case number 36829, the felony arson related to the fire damage to the estate of the Appellant's deceased mother (count one) and felony theft of personal property from the same (count two), were filed, reflecting that restitution was set at $31,200 for each count to be paid at a rate of $866.60 per month.  The Appellant filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

As we understand it, the Appellant's challenge to the order of restitution is twofold: (1) that the amount of restitution is unreasonable based on the Appellant's ability to pay; and (2) the amount of restitution is based on the trial court's erroneous recollection of the terms of the global plea agreement and therefore unreasonable.  In response, the State agrees with the Appellant's second ground for relief and urges this court to reverse the order of restitution and remand for a new restitution hearing because the trial court's order "requiring the [Appellant] to pay $62,400 over six years resulted from a misunderstanding of the structure of the [Appellant's] sentence."  We agree with the Appellant and conclude that a new restitution hearing is necessary to determine the Appellant's ability to pay under the three-year concurrent term of probation imposed for the arson and theft from the estate of the Appellant's deceased mother.

This court reviews an order of restitution for an abuse of discretion, granting a presumption of reasonableness to within-range sentences reflecting a proper application of the purposes and principles of the Sentencing Act.  State v. Cavin, 671 S.W.3d 520, 528 (Tenn. 2023); see also State v. Bohanon, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013) (citing State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012) and State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012)).  "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party."  State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

Restitution as a part of sentencing "is often ordered as a condition of probation or as an alternative to incarceration."  Cavin, 671 S.W.3d at 528 (citing Tenn. Code Ann. §§ 40-35-104(c)(2), -304(a)).  "The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty."  State v. Johnson, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997); see State v. Lewis, 917 S.W.2d 251, 257 (Tenn. Crim. App. 1995) ("Restitution in the criminal justice system is warranted only when it serves rehabilitation and deterrent purposes.").  Because the Appellant was convicted of theft, the trial court was statutorily required to impose restitution.  Tenn. Code Ann. § 40-20-116(a) (2018).

While there is no set formula for determining restitution, the amount of restitution must be reasonable. State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994). In ordering restitution, the trial court must consider the victim's "pecuniary loss." Tenn. Code Ann. § 40-35-304(b), (e); Smith, 898 S.W.2d at 747. However, the amount of restitution ordered "does not have to equal or mirror the victim's precise pecuniary loss." State v. Mathes, 114 S.W.3d 915, 919 (Tenn. 2003) (quoting Smith, 898 S.W.2d at 747). "Pecuniary loss" is defined as "[a]ll special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant" and "[r]easonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense[.]" Tenn. Code Ann. § 40-35-304(e)(1)-(2). "Special damages" are "the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case. . . ." Lewis, 917 S.W.2d at 255 (quoting Black's Law Dictionary 392 (6th ed. 1990)).

A trial court's finding of pecuniary loss must be "substantiated by evidence in the record." Tenn. Code Ann. § 40-35-304(e)(1) (2010). A victim seeking restitution must present sufficient evidence so the trial court can make a reasonable, reliable determination as to the amount of the pecuniary loss. Bohanon, 2013 WL 5777254, at *7 (citing State v. Bottoms, 87 S.W.3d 95, 108-09 (Tenn. Crim. App. 2001)). Though the strict rules of damages are somewhat relaxed when determining the amount of restitution, the burden of proof should not drop far below that required in civil courts. Id. This is because an order of restitution may be converted to a civil judgment if not paid upon the completion of a defendant's sentence. Finally, while a victim's testimony alone may be sufficient to establish special damages for purposes of restitution, general statements regarding the amount of loss without explanation as to how the value was determined are insufficient. Id. (citing State v. Blevins, No. E2006-00830-CCA-R3-CD, 2007 WL 1153122, at *8 (Tenn. Crim. App. Apr. 19, 2007) and State v. Gibson, No. M2001-01430-CCA-R3-CD, 2002 WL 1358711, at *3-4 (Tenn. Crim. App. June 24, 2002)) (reversing and remanding the trial court's restitution order where the victim made conclusory statements regarding the value of several stolen items without explanation, including tools which were unspecified in number and type)).

In addition, "the court shall consider the financial resources and future ability of the defendant to pay or perform" when determining "the amount and method of payment" of restitution. Tenn. Code Ann. § 40-35-304(d) (2014); see Bottoms, 87 S.W.3d at 108. Consideration of financial resources and future ability to pay is reasonable because "[a]n order of restitution which obviously cannot be fulfilled serves no purpose for the appellant or the victim." Johnson, 968 S.W.2d at 886.

In ordering restitution, the trial court must specify "the amount and time of payment" of the restitution and "may permit payment or performance in installments." Tenn. Code Ann. § 40-35-304(c). However, the trial court may not establish a payment or performance schedule that extends beyond the expiration date of a defendant's sentence. Id. § 40-35-304(g)(2). Accordingly, the trial court must set a total restitution amount that a defendant can reasonably pay within the time period that he or she will be under the jurisdiction of the trial court. Smith, 898 S.W.2d at 747.

The record reflects the Appellant entered a global plea agreement and received an effective sentence of twelve years, with the first six years to be served in confinement on the felony drug case and the last six years to be served on probation evenly split between the motorcycle theft for the first three-year period and the theft and arson related to the estate of the Appellant's deceased mother for the second three-year period. At the subsequent restitution hearing, the State did not seek restitution for the motorcycle theft case, the first three-year period of probation. As such, the proper scope of the restitution order was for a single three-year concurrent term of probation. However, when the trial court asked for clarification on the Appellant's global plea agreement structure, the State confirmed the probation period was "two 3-year periods, both for the C felony theft and the C felony arson." The court then proceeded to set restitution "half to the theft case, half to the arson case of . . . $31,200, and then $31,200 to the theft case, for a total of $62,400" and ordered the Appellant to pay $866.67 a month upon release from custody as a condition of probation.

Rather than a single three-year concurrent term of probation, based on the above calculations, the trial court believed, in error, that the Appellant was serving a three-year term of probation for the arson of the estate of his deceased mother consecutively to another three-year term of probation for the theft from the same. In doing so, the trial court ordered a payment schedule beyond the Appellant's three-year concurrent sentence. See Tenn. Code Ann. § 40-35-304(g)(2) (stating that the payment schedule for restitution ordered as part of a defendant's sentence may not extend beyond that sentence's length). This created a situation in which the Appellant could comply with the restitution order by paying $866.67 a month while simultaneously violating the order by not paying the full amount by the end of his three-year probationary term. State v. Saffles, No. E2020-01116-CCA-R3-CD, 2021 WL 4075030, at *8 (Tenn. Crim. App. Sept. 8, 2021) (citing cases reversing and remanding for the same error). Accordingly, we conclude the trial court abused its discretion in ordering a payment schedule that was inconsistent with the Appellant's three-year term of probation and remand for a new restitution hearing.

We further conclude that the trial court made insufficient findings of fact in support of the pecuniary loss of the decedent's estate and the Appellant's ability to pay. The record shows the administrator testified that the loss of personal property was $34,466.65 and that

the value of the house was between $150,000 to $170,000.  The insurance company paid the bank $124,000, the remainder of the mortgage amount, but otherwise denied the estate's claim.  The only proof of the Appellant's ability to pay was the State's reference to his substantial amount of jail credit and an unspecified affidavit noting the Appellant had previously worked as a logger for $100 a day.  Based on these figures, the trial court determined a total pecuniary loss of $62,400 and ordered the Appellant to pay $866.67 a month for six years.  Although the trial court deemed the administrator to be credible, her testimony was nothing more than a conclusory statement as to the loss amount.  Saffles, 2021 WL 4075030, at *9 (reversing restitution order and remanding for failure to make specific findings of fact in support of pecuniary loss amount).  Additionally, while trial courts are only required to "consider" a defendant's ability to pay, Cavin, 671 S.W.3d at 532, the evidence in this regard was virtually non-existent.  For all these reasons, we reverse the judgment of the trial court and remand this matter for a new restitution hearing.

## CONCLUSION

Based on the above reasoning and authority, we reverse the judgment of the trial court and remand this case for a new restitution hearing.


_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE